■ DAVID LICHTENSTEIN et al., Appellants, v WILLKIE FARR & GALLAGHER LLP, Respondent, et al., Defendants. [992 NYS2d 242]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered on or about April 25, 2013, which, to the extent appealed from as limited by the briefs, granted the motion by defendant Willkie Farr & Gallagher LLP to dismiss the legal malpractice cause of action pursuant to CPLR 3211 (a) (7), unanimously affirmed, with costs.

Plaintiff David Lichtenstein owns and manages real estate through his entities, plaintiffs The Lightstone Group, LLC and Lightstone Holdings, LLC. In 2007, Lichtenstein and a consortium of investors purchased Extended Stay, Inc. (ESI), which owns and manages hotels. Most of the purchase price was financed through a combination of $4.1 billion in mortgage loans to ESI and $3.3 billion in 10 mezzanine loan tranches to its subsidiaries. As part of the loan transaction, Lichtenstein and Lightstone Holdings executed 11 guarantees that subjected them to $100 million in personal liability in the event of particular "bad boy" acts which included the voluntary filing of a

bankruptcy petition by ESI. Lichtenstein managed ESI and became its president, CEO and chairperson. The majority of ESI's board of directors was comprised of Lichtenstein and representatives of entities he controlled.

The following year, ESI was faced with a liquidity crisis as its financial situation declined. ESI retained nonparty Weil, Gotshal & Manges as its restructuring counsel. As stated in the complaint, Weil Gotshal could not represent both ESI and Lichtenstein. As further alleged in the complaint, Lichtenstein retained Wilkie Farr in December 2008, "to advise and represent [him] in his role as an officer and director of ESI, particularly as to the liability of him and his entities in any restructuring, as well as to advise and represent affiliates of the Lightstone Group regarding their interests in ESI." Acting as ESI's counsel, Weil Gotshal recommended that ESI file for bankruptcy and advised that its board members, including Lichtenstein, were obligated as fiduciaries to achieve that result. Plaintiffs allege that their counsel, Willkie Farr, embraced Weil Gotshal's position although it was allegedly erroneous and would have exposed plaintiffs to $100 million in liability on the guarantees.

According to the complaint, ESI's financial condition continued to deteriorate, leaving Lichtenstein with a choice to either (a) have the company file for bankruptcy, exposing Lichtenstein to liability on the guarantees, or (b) "seek an alternative, including to refuse, or at least delay, and force the Lenders' hand to file a petition for involuntary bankruptcy or foreclose on the collateral (in which case Lichtenstein would risk a lawsuit under a breach of fiduciary claim [sic])." The complaint further alleges that Willkie Farr insisted that Lichtenstein had a fiduciary obligation to put ESI into bankruptcy for the benefit of the lenders. Willkie Farr warned that Lichtenstein otherwise faced the prospect of unequivocal and uncapped personal liability in any subsequent action by the lenders absent a bankruptcy filing by ESI. Before having ESI file for bankruptcy, Lichtenstein offered to surrender the collateral to the lenders as a group. Some of the lenders, however, balked and went to court to block any such surrender in what plaintiffs describe as a likely effort to force ESI into voluntary bankruptcy and trigger the "bad boy" guarantee. On Willkie Farr's advice, Lichtenstein caused ESI to file its bankruptcy petition on June 15, 2009. The lenders brought actions on the guarantees and a judgment was subsequently entered against Lichtenstein and Lightstone Holdings in the sum of $100 million.

This action was filed in June 2012. In making the instant mo-

tion to dismiss, Willkie Farr argued that its advice was reasonable and consistent with controlling Delaware law which imposed upon Lichtenstein, a director of an insolvent corporation, a fiduciary duty to maximize the company's long-term value for the benefit of its creditors and other constituencies such as equity holders and employees. Willkie Farr further asserted that the complaint is deficient because it does not allege that absent ESI's bankruptcy filing, Lichtenstein's liability would not have been triggered. The motion court granted Willkie Farr's motion, finding that the complaint contains no allegation of a failure "to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession which results in actual damages to . . . plaintiff" (*see AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428, 434 [2007]). We affirm.

On this appeal, plaintiffs argue that Willkie Farr's advice did not meet the requisite standard of professional skill because a derivative suit by the lenders against Lichtenstein for breach of fiduciary duty would not have been successful. In making the argument, plaintiffs recognize that under Delaware law, the exposure Lichtenstein faced by reason of ESI's insolvency differed from the exposure that would be faced by the officers and directors of a traditional stock-issuing corporation. For example, when a corporation is solvent its directors' fiduciary duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value (*North Am. Catholic Educ. Programming Found., Inc. v Gheewalla*, 930 A2d 92, 101 [Del 2007]). On the other hand, when a corporation is insolvent, "its creditors take the place of the shareholders as the residual beneficiaries of any increase in value" (*id.*). "Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties" (*id.*).

Citing *CML V, LLC v Bax* (28 A3d 1037 [Del 2011]), plaintiffs argue that the landscape is different with respect to Lichtenstein's fiduciary duty because the constituent entities that made up ESI were Delaware limited liability companies (LLCs) as opposed to corporations. In *CML*, the Supreme Court of Delaware held that under the Delaware Limited Liability Company Act (Del Code Ann, tit 6, ch 18) § 18-1002, derivative standing is limited to "member[s]" or "assignee[s]" and unavailable to creditors of LLCs (*id.* at 1046). Plaintiffs' argument is not persuasive because the Supreme Court of Delaware's opinion in

*CML* as well as the Delaware Chancery Court's opinion, which it affirmed (6 A3d 238 [Del Ch 2010]), were decided after Willkie Farr gave the advice described in the complaint. In fact, the Chancery Court observed that "virtually no one has construed the derivative standing provisions [of section 18-1002] as barring creditors of an insolvent LLC from filing suit" (*id.* at 242). The Chancery Court further noted that "[m]any commentators . . . have assumed that creditors of an insolvent LLC can sue derivatively" (*id.* at 243).

In a legal malpractice action, what constitutes ordinary and reasonable skill and knowledge should be measured at the time of representation (*Darby & Darby v VSI Intl.*, 95 NY2d 308, 313 [2000]). In this case, the time of Willkie Farr's representation preceded the Chancery Court's decision in *CML* by approximately two years. Accordingly, the complaint fails to allege that Willkie Farr's advice was wanting by reason of its failure to advise Lichtenstein that the creditors of the ESI constituent entities lacked standing to bring derivative actions.

Plaintiffs also argue that Lichtenstein would have been insulated from liability by the business judgment rule had he declined to have ESI file for bankruptcy protection. In support of the argument, plaintiffs cite *Mukamal v Bakes* (378 Fed Appx 890 [11th Cir 2010], *cert denied* 563 US —, 131 S Ct 1785 [2011]), for the proposition that under Delaware law, "officers and directors do not breach the duty of loyalty by exercising their business judgment and continuing to operate an insolvent corporation rather than entering bankruptcy and preserving assets to pay creditors" (*id.* at 900-901). The business judgment rule, however, protects only directors who are disinterested, meaning they do not, for example, stand to gain any personal financial benefit in the sense of self-dealing "as opposed to a benefit which devolves upon the corporation or all stockholders generally" (*Aronson v Lewis*, 473 A2d 805, 812 [Del 1984], *overruled on other grounds Brehm v Eisner*, 746 A2d 244 [Del 2000]). The complaint in this case makes it plain that Lichtenstein was not disinterested, because his stewardship of ESI was affected by a conflict between his fiduciary duties as a director of the company and his personal exposure to $100 million in liability on the guarantees in the event of ESI's voluntary bankruptcy. As disclosed by the complaint, Lichtenstein's conflict was the reason why Weil Gotshal, ESI's restructuring counsel, advised him to retain separate counsel. Had Lichtenstein failed to authorize or delayed ESI's bankruptcy filing, he would have been faced with uncapped personal liability on the basis of a breach of his duty to act in good faith. Such a breach occurs

"when a director 'intentionally acts with a purpose other than that of advancing the best interests of the corporation' " (*In re USA Detergents, Inc.*, 418 BR 533, 545 [D Del 2009] [citation omitted]).

There is no merit to plaintiffs' argument that Willkie Farr overlooked the availability of an equitable defense under the doctrine of in pari delicto. By operation of the doctrine, the position of a party defending against a claim is better than that of the party asserting the claim in a case of equal or mutual fault (*see In re Oakwood Homes Corp.*, 389 BR 357, 365 [D Del 2008], *affd* 356 Fed Appx 622 [3d Cir 2009]). Here, plaintiffs argue that the lenders could have been faulted for structuring the loan transactions in a way that prevented ESI from declaring bankruptcy. Plaintiffs' argument is flawed because they allege no wrongdoing that the lenders have committed in negotiating the guarantees in the course of an arms length transaction. We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Friedman, DeGrasse, Freedman and Kapnick, JJ.